## Maxler, Appellant, *v.* Freeport Borough.

*Road law—Change of grade—Damages—Act of May 24, 1878, P. L. 129—Jurisdiction—Act of May 16, 1891, P. L. 75.*

1. Where a petition under the Act of May 24, 1878, P. L. 129, for the appointment of viewers to assess damages for injuries resulting from the change of the grade of a street, asserts that the change of grade was made without the consent of the petitioners, and without making any compensation to them for the damages sustained or likely to be sustained, and that they and the borough authorities were un-

able to agree upon the amount of injury or damages sustained by them, the averments of the petition are sufficient to give the court jurisdiction, although no copy of the proceedings on the part of the borough were attached to the petition, and there was no allegation of any legal action upon the part of the borough. Even if in good practice the ordinance should have been set forth, or that the change of grade was made in pursuance of it, the omission to do so was a mere irregularity which the borough could not take advantage of after an issue had been framed on its own appeal.

2. Where a borough on the petition of property owners has graded, curbed and paved a street, and apportioned the expense thereof upon the abutting owners according to frontage, the owners may thereafter proceed under the Act of May 24, 1878, P. L. 129, to have viewers appointed to assess their damages for injuries caused by the change of grade. The fact that the grading, paving and curbing was done at the same time does not require an owner to proceed for an assessment of damages by three viewers under sec. 8 of the Act of May 16, 1891, P. L. 75.

3. The Act of May 24, 1878, P. L. 129, was not repealed by the Act of May 16, 1891, P. L. 75. The two acts may stand together, and both be executed in their appropriate places. If a citizen desires to proceed on his own account, he may proceed under the act of 1878, whereas if he wishes to embrace in his proceeding all the cases affected by the particular improvement, he will proceed under the act of 1891.

Argued May 8, 1911. Appeal, No. 87, April T., 1911, by plaintiff, from order of C. P. Armstrong Co., Dec. T., 1908, No. 89, refusing to take off nonsuit in suit of Frank Maxler and E. H. Wallace v. Freeport Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Issued on appeal from award of a jury of view. Before PATTON, P. J.

The opinion of the Superior Court states the case.

*Error assigned* was order refusing to take off nonsuit.

*R. A. McCullough,* for appellants, cited: Hand v. Fellows, 148 Pa. 456; Hanover Borough's Appeal, 150 Pa. 202; Verona Borough v. R. R. Co., 187 Pa. 358; Seams v. Washington Borough, 172 Pa. 467; Beltzhoover Borough v. Gollings, 101 Pa. 293.

*H. A. Heilman*, for appellee, cited: Suter v. Wilmerding Borough, 14 Pa. Dist. Rep. 391; Michener v. Philadelphia, 118 Pa. 535; Hanover Borough's Appeal, 150 Pa. 202; Hand v. Fellows, 148 Pa. 456.

OPINION BY RICE, P. J., October 9, 1911:

In order to give a correct understanding of this case, it seems necessary to recite, at considerable length, the proceedings which culminated in the plaintiffs being dismissed without being permitted to be heard before the jury upon the question as to the amount of damages, if any, they had sustained by reason of the change of grade of Second street, in the issue that had been framed at the instance of the borough for the determination of that very question.

Upon petition of more than two-thirds in number and interest of the abutting property owners, the borough ordained that a certain portion of the street be graded, curbed, and paved with brick, and that two-thirds of the cost and expense of the grading, curbing, and paving be collected from the owners of real estate abutting on the line of the improvement "by equal assessment on the foot frontage bounding and abutting as aforesaid." By an ordinance adopted after the improvement had been made, two-thirds of the cost and expense, apportioned according to frontage, was assessed upon the abutting properties; and about two months later municipal claims were filed against the plaintiffs' property for their proportion.

After the improvement had been made the plaintiffs presented their petition to the court of common pleas, alleging, inter alia, that they had sustained injury to the extent of $3,000 by the raising of the grade five feet along the entire length of their properties (of which they were tenants in common), and praying for the appointment of five viewers to estimate and determine their damages. We shall refer to this petition more particularly hereafter. Viewers were appointed, who, in due season and having proceeded regularly, reported that, "having due regard to and making just allowance for the advantages which have

resulted or which seem likely to result" to the plaintiffs, they assessed the damages sustained or likely to be sustained by them "by reason of the change of grade in said street" at $1,500. On December 7, 1908, the court, upon presentation and due consideration of the report (we quote the words of the order), "approves and confirms the same nisi, allowing ten days for exceptions thereto, and decrees that if no exceptions are filed within that time the same shall be confirmed absolute and judgment entered with costs."

No exceptions were filed, but the borough appealed from the assessment of damages made by the viewers, and, to quote the words of the appeal, "demands that the amount of plaintiffs' damages shall be determined by a jury according to the course of the common law." This appeal, containing the foregoing demand, to which we call particular attention, was presented in open court on December 21, 1908, and ordered to be filed.

Nine months later, by order filed, the court framed an issue on the appeal, in which Maxler and Wallace were made plaintiffs and the borough was made defendant, "to try the question how much damage, if any, the plaintiffs have sustained by reason of the change of grade in improvement of Market and Second streets," etc. The cause was duly certified to be at issue and was regularly placed on the issue docket. At December term it was on the trial list, but was continued. So far as appears, no objection was raised up to this time to the regularity of the proceedings or to the jurisdiction of the court. The issue was on the trial list again at March term, 1910, and, after the jury to try it had been called but before they were sworn, the borough denied the jurisdiction of the court to try the question at issue, for reasons which it specified. In the appellants' paper-book this is entitled, "Defendant's motion for nonsuit or dismissal of claim." It seems to have been so regarded by court and counsel. At any rate, the court's order sustaining "the motion of defendant's counsel" resulted virtually in a dismissal of the pro-

ceedings, at least so far as the issue was concerned. From this action of the court and its subsequent denial of the plaintiffs' motion to take off the dismissal of the proceedings in the appeal and to reinstate the case under the issue framed, the plaintiffs appealed to the Supreme Court, and that court remitted the cause to us.

It is argued by counsel for the borough that the order of December 7, 1908, did not, ipso facto, have the effect of a confirmation absolute of the report at the expiration of ten days, and that, although no exceptions were filed within the time allowed, a formal confirmation absolute was necessary. We need not discuss that question, for it is not apparent that a determination of it either way would affect the determination of the question of the borough's right to demand that the issue, that had been framed upon its appeal and at its instance, should be dismissed.

It is further contended that the court had not jurisdiction to try the issue, because no copy of any proceedings on the part of the borough was attached to the petition for the appointment of viewers and the petition did not allege in its body any legal action upon the part of the borough; and further, if the facts set forth in the petition were true, the action of the borough should have been trespass. The petition was evidently drawn under the Act of May 24, 1878, P. L. 129, and substantially conforms to its provisions. Amongst other things, it asserts that the change of grade was made without the consent of the petitioners and without making any compensation to them for the damages sustained or likely to be sustained, and that they and the borough authorities were unable to agree upon the amount of injury or damages sustained by them. Unless the act of 1878 was never applicable or has been abrogated as to such a case as this, these averments were sufficient to give the court jurisdiction: Seaman v. Boro. of Washington, 172 Pa. 467; Klenke v. W. Homestead Boro., 216 Pa. 476. We do not concede that the petition was defective in not setting forth the ordinance under which the im-

provement was made.   Even if in good practice it should
have set forth the ordinance at length, or at least should
have alleged that the change of grade was made pursuant
to ordinance, the omission to do so was no more than an
irregularity, which could not be taken advantage of by the
borough to annul the issue that had been framed on its ap-
peal.

The objection most seriously urged against the jurisdic-
tion of the court to frame and try the issue is based on the
supposed lack of jurisdiction to appoint the viewers.   The
objection was thus stated at the time the motion to dismiss
was made: "That the street having been graded and paved
at the same time, the petition for the appointment of
viewers, under the act of 1878, is irregular and void, and
the court is without jurisdiction to appoint said viewers."
The learned judge went still further and expressed the
opinion that the whole proceeding was wrong from the out-
start.   "The borough either should have proceeded sep-
arately under the act of 1878 to have the grading done, and
under the act of 1889 to have the paving and curbing
done, or should have proceeded under the act of 1891
which provides for grading, paving and curbing."   As a
corollary he expressed the opinion that the borough
graded the street without authority of law, and had it not
been a municipality would have been a trespasser.   But,
while conceding that trespass would not lie, and that the
plaintiffs were entitled to recover in an appropriate pro-
ceeding such damages as they had sustained, he held
that, as the grading, paving, and curbing were done at the
same time, the plaintiffs' exclusive remedy was by an as-
sessment of damages by three viewers appointed under
sec. 8 of the Act of May 16, 1891, P. L. 75.

These contentions require a consideration of the Act of
April 23, 1889, P. L. 44, the Act of May 19, 1897, P. L. 79,
the Act of May 24, 1878, P. L. 129, and the eighth section
of the act of 1891.

The act of 1889 authorized boroughs to curb and pave,
upon the petition of two-thirds of the owners of property

representing not less than two-thirds in number of feet of the properties fronting on the street proposed to be paved, and to collect two-thirds of the cost and expense of the same from the owners of abutting properties, by an equal assessment on the feet front, etc.  The act of 1897 authorized boroughs to grade, upon the petition of a majority in number and interest of the owners of property abutting on the line of the proposed improvement, and to provide for the payment of the cost and expense thereof, in whole or in part, by an equal assessment upon the property abutting thereon, according to the foot front rule. It is expressly asserted in the assessment ordinance, and is conceded in argument, that the borough acted under the supposed authority of these two acts, in grading and paving Second street and in assessing two-thirds of the cost and expense upon the abutting properties.  Their action was based on a petition which came up to the requirements of the former act, and, therefore, to the less onerous requirement of the latter act.  Further, the assessment of two-thirds of the cost and expense of the curbing and paving upon the abutting properties was in strict accordance with the authority given by the act of 1889, and the assessment upon them of two-thirds of the cost and expense of the grading was well within the power to provide for the payment of the same, "in whole or in part," by an equal assessment upon them.  So, also, the ordinance conformed to both acts in apportioning the cost and expense according to the foot front rule.  Neither of these acts provides for the damages that the landowner may sustain.  But the act of 1878 gives effect to sec. 8, art. XVI, of the constitution, and provides that "where the proper authorities of any borough have, or may hereafter change the grade or lines of any street or alley, or in any way alter or enlarge the same, thereby causing damage to the owner or owners of property abutting thereon, without the consent of such owner, or in case they fail to agree with the owner thereof for the proper compensation for the damage so done," the court of common pleas shall ap-

point five viewers, who, "having due regard to and making just allowance for the advantages which may have resulted, or which may seem likely to result, to the owner or owners of property abutting thereon, for which damages may be allowed or claimed," shall estimate and determine whether any, and if any, how much damage such property owner may have sustained, etc. The act further gives to either party the right to an appeal as in other cases. We have quoted the language of the act as the best mode of showing its comprehensiveness. There is nothing in its express provisions, or to be deduced by argument from the general purpose of the enactment, to justify a construction that would exclude the assessment of damages from change of grade, in such a case as this, from its operation. Therefore, if there were no further legislation affecting the question, the fact that the borough undertook to accomplish by one ordinance what it had power to accomplish by separate ordinances, would not invalidate its action, nor debar the landowners of the right to invoke the provisions of the act of 1878 for the purpose of having their damages from change of grade assessed. We come then to sec. 8 of the act of 1891. This section applies as well to cases where grading and paving are done under separate ordinances and at different times as to cases where they are done as successive acts under a single ordinance. In other words, the act was not intended simply to provide a new and exclusive method of procedure for the latter class of cases. It no more clearly repealed the act of 1878 as to them than as to cases where grading alone has been done. The question of the repealing effect of the act was elaborately considered in Seaman v. Boro. of Washington, 172 Pa. 467, which, by the way, was a case where both grading and paving had been done. The case, as considered on appeal, arose from the refusal of the borough's motion to quash the landowner's petition under the act of 1878 to assess damages caused by change of grade. The order was affirmed, and the point was distinctly decided that the act of 1878 was not repealed by the act of 1891,

and that the two acts can stand together and both be executed in their appropriate cases.   We quote from the opinion of Justice GREEN: "The act of 1878 provides a remedy for the individual citizen in the single case of changing or altering grades, whereas the act of 1891 provides comprehensively for proceedings intended to be instituted by municipalities chiefly, in all cases of laying out, opening, widening and extending streets, alleys and lanes, and for the building of bridges, piers, abutments, sewers and other works, and for ascertaining in one proceeding all the damages suffered by all abutting owners affected by the particular improvement, and assessing upon all properties benefited, the amounts of the benefits as a fund out of which to pay the damages.   The act of 1878 contains no such provisions and therefore there is no conflict between the two acts as to these most important matters."   Further on in his opinion he says: "if the citizen desires to proceed on his own account and for the ascertainment of his own damages alone, he will proceed under the act of 1878, which is especially adapted to his case, whereas if he wishes to embrace in his proceeding all the cases affected by the particular improvement, he will proceed under the act of 1891."   The question of the implied repeal of the act of 1878 has arisen in different ways, in subsequent cases, and invariably has been decided in the same way; so that it ought to be regarded as settled.

The foregoing review of the legislation shows that the court had jurisdiction of the subject-matter.   If the plaintiffs' properties were damaged by the change of grade, the constitution and the act passed to carry it into effect entitled them to recover the same by proceedings in the common pleas.   Even if it be conceded that although the borough had elected to make the improvement at the cost and expense of the owners of abutting properties, to be apportioned according to the foot front rule, it nevertheless could have moved, under the act of 1891, to have the damages and benefits to all the properties, from paving as well as grading, assessed in one proceeding, yet it must also

be conceded that, if it had formally joined with the plaintiffs in a petition to have the damages to their properties, from change of grade alone, assessed under the act of 1878, the court would have had jurisdiction. "Objections to jurisdiction are of two classes between which there is a clear and well-settled distinction, first those relating to the authority of the court over the subject-matter, and secondly those relating to its authority over parties. Objections of the first class cannot be waived nor jurisdiction obtained by acquiescence. . . . It is of this class that it is commonly said that consent cannot give jurisdiction. But in the second class the rule is different:" Com. v. Barnett, 199 Pa. 161. The borough did not join in the petition, but it acquiesced in the proceeding by its silence, and unequivocally gave its assent to the same by appealing from the report of viewers, and coupling with that appeal a demand that the amount of the plaintiffs' damages be determined by a jury according to the course of the common law. Having taken this position, and the issue having been framed in accordance with its demand, it could not lie by until the eve of trial and then assert anything short of complete lack of jurisdiction of the subject-matter as a reason for dismissing the proceedings. We do not mean to intimate that if the objection had been raised by exceptions to the report of viewers it would have been fatal. But in any view that may be taken of the case, the objection came too late at the time it was made, and should have been overruled.

The order is reversed and set aside at the costs of the appellee. The appeal and issue are reinstated, and the record is remitted to the court below with a procedendo.